**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GENOA HEALTHCARE LLC | ) | CASE NO. _____ |
| 2285 Benden Dr. | ) | |
| Wooster, OH 44691 | ) | |
| | ) | |
| *Plaintiff* | ) | JUDGE _____ |
| v. | ) | |
| | ) | |
| HEIDI L. GEIB | ) | |
| 568 Norway Drive | ) | |
| Wooster, OH 44691 | ) | **VERIFIED COMPLAINT FOR** |
| | ) | **TEMPORARY RESTRAINING** |
| and | ) | **ORDER, PRELIMINARY AND** |
| | ) | **PERMANENT INJUNCTIVE** |
| WOOSTER PHARMACY LLC | ) | **RELIEF, AND DAMAGES** |
| d/b/a HEIDI'S PHARMACY | ) | |
| c/o Heidi L. Geib | ) | |
| 568 Norway Drive | ) | |
| Wooster, OH 44691 | ) | |
| | ) | |
| 1790 Eagle Pass | ) | |
| Wooster, OH 44691 | ) | |
| | ) | |
| *Defendants.* | ) | |

Plaintiff Genoa Healthcare LLC ("Genoa" or "Plaintiff") states as follows for its Complaint against Defendants Wooster Pharmacy LLC d/b/a Heidi's Pharmacy ("Heidi's Pharmacy") and Heidi L. Geib ("Geib") (collectively, "Defendants"):

## NATURE OF THIS ACTION

1.      This is an action by Genoa, which operates a pharmacy in Wooster, Ohio, against its former Site Manager, Heidi L. Geib, who worked at Genoa for over ten (10) years, and Heidi's Pharmacy, her newly-opened competing pharmacy 0.2 miles away from Genoa, for (1) breaching her Proprietary Interest Protection Agreement with Genoa (the "Agreement"); (2) violating the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1832, *et seq.*; (3) violating the Ohio

Uniform Trade Secrets Act, R.C. § 1333.61, *et seq.*; (4) inevitable disclosure; (5) tortious interference with business relationships; and (6) unfair competition.

2.        In the Agreement, Geib promised that she would keep confidential Genoa's confidential, proprietary, and trade secret information, that she would not use or disclose it except for Genoa's benefit, and that for twelve (12) months after her termination, she would not: (1) compete with Genoa; (2) solicit business from Genoa providers or customers; (3) solicit, employ, or recruit any Genoa employees; and (4) induce or influence any Genoa employees, consultants or providers to terminate their relationship with Genoa.

3.        As Genoa Site Manager, Geib managed Genoa's pharmacy and had intimate knowledge of Genoa's pharmacy operations including, but not limited to, its product and marketing plans, business strategies and plans, financial and pricing information, customer, supplier, and provider lists and information.

4.        Following Geib's termination from Genoa in January 2021, on August 23, 2021, Defendants opened a competing pharmacy 0.2 miles from Genoa, upon information and belief, induced at least four (4) Genoa employees to work at Heidi's Pharmacy, and solicited and obtained substantial business from at least seven (7) of Genoa's residential facility providers.

5.        Indeed, on the first day Heidi's Pharmacy opened for business—August 23, 2021—Heidi's Pharmacy asked Genoa to transfer 862 prescriptions of Genoa's customers by Wednesday, August 25, 2021 and another 600 prescriptions of Genoa's customers by August 31, 2021.

6.        Given Defendants' knowledge of Genoa's confidential, proprietary, and trade secret information, solicitation of Genoa's employees, and convincing of Genoa's customers to switch nearly 1,500 prescriptions from Genoa to Heidi's Pharmacy, Defendants are poised to inflict immediate, irreparable harm to Genoa.

7.     Geib's and Heidi's Pharmacy's actions make it clear that they seek to market, sell, and perform the same category of services to and for the same customers Geib serviced during her employment with Genoa.

8.     Upon information and belief, Geib's role with Heidi's Pharmacy has already required, and will inevitably continue to require, that she use and/or disclose Genoa's confidential, proprietary, and trade secret information.

9.     Therefore, Genoa seeks to enjoin Defendants from (1) operating Heidi's Pharmacy in competition with Genoa; (2) soliciting and employing Genoa's employees; (3) soliciting and servicing Genoa's providers and customers; and (4) using Genoa's confidential, proprietary, and trade secret information to unfairly compete with Genoa.

## THE PARTIES

10.     Plaintiff Genoa is a Pennsylvania limited liability company registered to do business in Ohio.  Genoa is wholly owned by a corporation registered outside of Ohio and with its principal place of business outside of Ohio.

11.     Plaintiff Genoa is an affiliate of United HealthCare Services, Inc.

12.     Defendant Geib is an individual residing, upon information and belief, at 568 Norway Drive, Wooster, Ohio 44691.

13.     Defendant Heidi's Pharmacy is an Ohio limited liability company registered to do business in Ohio, with its principal place of business at 1790 Eagle Pass, Wooster, Ohio 44691.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this matter based on diversity of citizenship pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and the amount-in-controversy exceeds $75,000, exclusive of interest and costs.

15.     This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Plaintiff has asserted a claim under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*

16.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise out of the same operative facts as its federal claim.

17.     This Court has personal jurisdiction over Defendants because Defendants have conducted business, and have substantial contacts, in the Northern District of Ohio.

18.     Venue is proper in this Court under 28 U.S.C. § 1391(a) because Defendants reside in this district and the events or omissions giving rise to the claims against Defendants occurred and continue to occur in this district.

**GENERAL ALLEGATIONS**

**Genoa's Business and Confidential, Proprietary, and Trade Secret Information**

19.     Genoa is a provider of pharmacy, outpatient telepsychiatry, and clinical services, with a focus on serving the needs of those in the behavioral health and addiction treatment communities, and others with complex, chronic health conditions.

20.     Genoa depends on its network of relationships and goodwill.  The Company's reputation, course of dealing, and history with providers and customers can lead to a level of trust and confidence in it. Its goodwill with providers and customers is extremely important and valuable.

21.     Given the technical and relationship-driven nature of Genoa's business, Genoa places a high priority on ensuring the protection of its confidential, proprietary, and trade secret information.

22.     Genoa takes steps to maintain the confidentiality of this information by, among other things, requiring its employees to enter into non-disclosure and non-competition agreements like the Agreement signed by Geib, and by not disclosing its confidential, proprietary, or trade secret information outside the company.

23.     Genoa has expended substantial amounts of time, money, and effort to develop its trade secrets and/or valuable confidential business information, and it derives independent economic value from this information not being generally known or readily ascertainable by proper means by others who can obtain economic value from its disclosure or use.

24.     This information is valuable to Genoa, and it would be valuable to a competitor because it would enable the competitor to unfairly compete without having to spend the time and money to acquire such information independently through legitimate means, resulting in extreme harm to Genoa.

### Geib's Employment with Genoa

25.     On or about January 18, 2010, Geib began working for Genoa at its pharmacy located at 2285 Benden Dr., Wooster, Ohio 44691.

26.     Throughout her employment, Geib worked for Genoa as a Site Manager.

27.     As Site Manager, Geib managed Genoa's pharmacy operations, worked directly with Genoa's providers and customers, and worked regularly with Genoa's confidential, proprietary, and trade secret information.  Among other things, she was privy to Genoa's entire pharmacy operations, including but not limited to, its product and marketing plans, business strategies and plans, financial and pricing information, and information regarding Genoa's business relationships, customers, and providers.  By virtue of her position, Genoa entrusted her

5

to interact directly with its customers and providers and to cultivate business relationships with them for the benefit of Genoa.

28.     On February 3, 2019, in consideration of her continued employment at Genoa, Geib signed a Proprietary Interest Protection Agreement (the "Agreement") with United HealthCare Services, Inc., referred to in the Agreement together with its affiliates (of which Genoa is one) as "UnitedHealth Group."  A true and correct copy of the Agreement is attached at Exhibit A and is incorporated by reference.

29.     In the Agreement, Geib acknowledged that she would receive access to confidential, proprietary, and trade secret information, and that she would not use it except in connection with her work for Genoa or as consented to in writing by Genoa.  *See* Exhibit A ¶ 2.

30.     Specifically, the Agreement provides:

### Confidential Information

UnitedHealth Group will give Employee access to confidential, proprietary and trade secret information belonging to UnitedHealth Group ("Confidential Information").  Confidential Information includes, by way of example: inventions, product and marketing plans business strategies and plans; merger and acquisition targets; financial and pricing information; computer programs, models, databases and source codes; analytical models; and customer, supplier and vendor lists and information.  Employee understands that Confidential Information includes not only information contained in written or digitized form, but also information that Employee may commit to memory.

Employee agrees to keep confidential all Confidential Information, so long as such information is not generally available to the public, both during and after Employee's employment with UnitedHealth Group.  Employee agrees not to disclose or use Confidential Information, either during or after Employee's employment, except as necessary for the performance of Employee's duties for UnitedHealth Group or as consented to in writing by UnitedHealth Group.

*See* Exhibit A ¶ 2.

31.     In addition to her agreement not to disclose Genoa's proprietary and confidential information, as a condition of her continued employment with Genoa, Geib agreed that during her

employment and for the twelve (12) months after her termination of employment for any reason, she would not:

(i) Solicit or conduct business with any business competitive with UnitedHealth Group from any person or entity: (a) who was a UnitedHealth Group provider or customer within the 12 months before Employee's employment termination and with whom Employee had contact regarding UnitedHealth Group's activity, product, or services, or for whom Employee provided services or supervised employees who provided those services, or about whom Employee learned Confidential Information during employment related to UnitedHealth Group's provision of products and services to such person or entity, or (b) was a prospective provider or customer UnitedHealth Group solicited within the 12 months before Employee's employment termination and with whom Employee had contact for the purposes of soliciting the person or entity to become a provider or customer of UnitedHealth Group, or supervised employees who had those contacts, or about whom Employee learned Confidential Information during employment related to UnitedHealth Group's provision of products and services to such person or entity;

(ii) Raid, hire, employ, recruit or solicit any UnitedHealth Group employee or consultant who possesses Confidential Information of UnitedHealth Group to leave UnitedHealth Group to join a competitor;

(iii) Induce or influence any UnitedHealth Group employee, consultant, or provider who possesses Confidential Information of UnitedHealth Group to terminate his, her or its employment or other relationship with UnitedHealth Group; or

(iv) Assist anyone in any of the activities listed above.

*See* Exhibit A ¶ 3A.

32.    Geib also agreed to the following restrictions on her ability to work for a competitor:

Non-Competition.  Employee will not:

(i) Engage in or participate in any activity that competes, directly or indirectly, with any UnitedHealth Group activity, product or

7

service that Employee engaged in, participated in, or had Confidential Information about during Employee's last 36 months of employment with UnitedHealth Group; or

(ii) Assist anyone in any of the activities listed above.

*See* Exhibit A ¶ 3B.

33.     Geib acknowledged that "[b]ecause UnitedHealth Group's business competes on a nationwide basis, [Geib's] obligations under this 'Restrictive Covenants' section shall apply on a nationwide basis anywhere in the United States."  *See* Exhibit A ¶ 3C.

34.     Geib expressly agreed that the Restrictive Covenants "are reasonable and necessary to protect the legitimate interests of UnitedHealth Group."  *See* Exhibit A ¶ 3D.

**Defendants Violated the Agreement and Engaged in Unfair Competition by, Among Other Things, Opening a Competing Pharmacy 0.2 Miles from Genoa's Pharmacy, Inducing the Transfer of Nearly 1,500 of Genoa's Customer Prescriptions, and Soliciting and Employing Former Employees of Genoa Subject to Restrictive Covenants**

35.     On January 14, 2021, Genoa terminated Geib's employment.

36.     On February 1, 2021, Geib registered the corporate entity of Wooster Pharmacy LLC with the Ohio Secretary of State and designated herself its statutory agent.  *See* Exhibit B.

37.     On April 11, 2021, Wooster Pharmacy registered the name "Heidi's Pharmacy" as a trade name with the Ohio Secretary of State.  *See* Exhibit C.

38.     That same day, Heidi's Pharmacy received a license from the Ohio Board of Pharmacy.  *See* Exhibit D.

39.     The license is a "Terminal – Pharmacy – Category 3" license with the sub-category of "IP – Pharmacy Servicing Institutions."  *See* Exhibit D.

40.     The  sub-category of "IP – Pharmacy Serving Institutions" is for group homes and residential business, which are the same patient populations serviced by Genoa.

41.     The license for Heidi's Pharmacy lists its business address as 1790 Eagle Pass,

Suite 2, Wooster, Ohio 44691-2531.

42.     On August 23, 2021, Heidi's Pharmacy opened for business at that address.

43.     That address is 0.2 miles from the location of Genoa's pharmacy, which is located at 2285 Benden Drive, Wooster, Ohio 44691.

44.     Upon information and belief, Geib owns and oversees the operations of Heidi's Pharmacy.

45.     Heidi's Pharmacy is a direct competitor of Genoa.

46.     Upon information and belief, Defendants solicited and currently employs four (4) former employees who recently left Genoa—Mary Purvis, Kathleen Patterson, James Cunningham, and Linda McMaster.

47.     Upon information and belief, Defendants solicited and secured business from at least seven (7) residential facilities that are customers of Genoa.

48.     Specifically, on August 23, 2021, Linda McMaster, a former employee of Genoa, called Genoa on behalf of Heidi's Pharmacy and requested that Genoa transfer 862 of Genoa's prescriptions by Wednesday, August 25, 2021.

49.     Ms. McMaster also requested that Genoa transfer an additional 600 of Genoa's prescriptions by August 31, 2021.

50.     These prescriptions are from seven (7) residential facilities that have been customers of Genoa for years, and with whom Geib had contact during her employment at Genoa.

51.     In light of the foregoing activities, Defendants have obtained and used and, upon information and belief, will continue to obtain and use Genoa's Confidential Information.

52.     By owning and operating Heidi's Pharmacy, a direct competitor of Genoa, Geib is in a role that is substantially similar, if not identical, to her role at Genoa, and it would be

impossible for her to continue her work at Heidi's Pharmacy without using or disclosing Genoa's Confidential Information, including her knowledge of customers' and providers' information and relationships that Genoa developed through substantial time, money, and effort.

53.     As a direct and proximate result of Geib's breach of the Agreement and inevitable disclosure of Genoa's Confidential Information, including trade secrets, as well as Defendants' tortious activities and unfair competition, Genoa is suffering and will continue to suffer immediate irreparable harm that cannot be adequately addressed at law, including lost goodwill, customer relationships, and improper and unfair retention and use of Genoa's Confidential Information (including trade secrets).

### COUNT I – BREACH OF CONTRACT
### (AGAINST GEIB)

54.     Genoa hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

55.     Geib entered into the Agreement with United HealthCare Services, Inc.

56.     As an affiliate of United HealthCare Services, Inc., Genoa is an intended third-party beneficiary of the Agreement.  The Agreement defines United HealthCare Services, Inc. together with its affiliates as "UnitedHealth Group," and "UnitedHealth Group" is referenced throughout the restrictive covenants of the Agreement, indicating that the Agreements specifically benefited Genoa as an affiliate.

57.     The Agreement is a valid and enforceable contract, which imposes reasonable restrictions, for which Geib received good and valuable consideration including, but not limited to, employment with Genoa, substantial compensation, and access to and use of Genoa's Confidential Information during her employment.

10

58.     The Agreement provides that Genoa is entitled to injunctive relief for Geib's breach of the Agreement, and that Geib would pay Genoa's attorneys' fees and costs incurred in obtaining such relief.

59.     Geib has breached and will continue to breach her obligations contained in the Agreement by: (1) opening a directly competing pharmacy 0.2 miles away from Genoa; (2) misappropriating Genoa's Confidential Information, including trade secrets; (3) soliciting and employing Genoa's employees to work for Heidi's Pharmacy; (4) soliciting (or assisting another to solicit) and servicing Genoa's customers and providers, with whom she worked while at Genoa.

60.     Further, Geib's role as the owner of Heidi's Pharmacy has resulted, and will result in the use or disclosure of Genoa's Confidential Information, as Geib cannot divorce herself from the Confidential Information she possesses concerning Genoa's business, providers, and customers.

61.     Geib's breaches of the Agreement are ongoing and will continue unless and until she is ordered to comply with its terms.

62.      As a direct and proximate result of Geib's breaches of the Agreement, Genoa has suffered and will continue to suffer irreparable injury, as acknowledged by Geib in the Agreement, including the loss of business from providers and customers, loss of the competitive advantages Genoa rightfully and legitimately attained, and damage to Genoa's goodwill.  Accordingly, Genoa is entitled to injunctive and equitable relief.

63.     Additionally, in consequence of Geib's breaches of the Agreement, Genoa seeks damages, including compensatory and punitive damages as the result of Defendants' willful and malicious conduct, along with reasonable attorneys' fees and costs, in an amount to be determined at trial.

## COUNT II – DEFEND TRADE SECRETS ACT
### (AGAINST DEFENDANTS)

64.     Genoa hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

51.     The federal Defend Trade Secrets Act of 2016 ("DTSA") forbids threatened and actual misappropriation of trade secrets "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  *See* 18 U.S.C. § 1832, *et seq.*

52.     "Trade secrets" are broadly defined under the DTSA to include "all forms and types of financial, business, scientific, technical, economic or engineering information."

53.     During her employment with Genoa, Geib had access to confidential and proprietary information that constituted Genoa's trade secrets.  As described above, this included, but was not limited to, its product and marketing plans, business strategies and plans, financial and pricing information, and information regarding Genoa's business relationships, customers, and providers.

54.     This information was related to multiple products or services used in, or intended for use in, interstate commerce.

55.     This trade secret information is: (i) not known outside Genoa; (ii) known only by Genoa employees, including Geib, and others involved in the business; (iii) subject to reasonable measures to guard the secrecy of the information, including Genoa's non-disclosure agreement; (iv) valuable; and (v) difficult for others to properly acquire or independently duplicate.

56.     Defendants knew that they had a duty, pursuant to the Agreement and Genoa's policies, to maintain the secrecy of Genoa's Confidential Information, including trade secrets.

57.     Defendants have, and will continue to use, Genoa's Confidential Information, including trade secrets, to directly compete with Genoa and alter Genoa's relationship with its providers and customers.

58.     Defendants have used this information without Genoa's knowledge, consent, or authorization to benefit them in a manner that has caused, and will continue to cause, irreparable harm to Genoa.

59.     Defendants' actions constitute actual and continuing misappropriation in violation of the DTSA.

60.     Defendants' actual and continuing misappropriation is knowing and willful.

61.     Unless Defendants are enjoined, Genoa will lose its competitive advantage in the business in which the companies directly compete, and has lost and could continue to lose, among other things, providers, customers, and business expectations, and goodwill, for which there is no adequate remedy at law.  Accordingly, Genoa seeks injunctive relief to prevent Defendants' actual and threatened misappropriation of Genoa's Confidential Information, including trade secrets.

62.     Additionally, in consequence of Defendants' misappropriation of Genoa's trade secrets, Genoa seeks damages, including compensatory and punitive damages as the result of Defendants' willful and malicious conduct, along with reasonable attorneys' fees and costs, in an amount to be determined at trial.

### COUNT III – MISAPPROPRIATION OF TRADE SECRETS UNDER
### R.C. § 1333.61, *et seq.*
### (AGAINST DEFENDANTS)

63.     Genoa hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

64.     The actions of Defendants set forth herein constitute misappropriation of trade secrets, and Genoa is entitled to damages and injunctive relief under R.C. § 1333.61, *et seq.*

65.     Genoa owns trade secrets as defined by Ohio law including, without limitation, information regarding its product and marketing plans, business strategies and plans, financial and pricing information, and information regarding Genoa's business relationships, customers, and providers.

66.     Genoa takes reasonable steps to maintain confidentiality with respect to its trade secret material, including the information referenced above.

67.     Defendants misappropriated Genoa's trade secrets including, without limitation, Genoa's marketing plans, business strategies and plans, financial and pricing information, and information regarding Genoa's business relationships, customers, and providers.

68.     Defendants have, and will continue to use, Genoa's Confidential Information, including trade secrets, to directly compete with Genoa and alter Genoa's relationship with its providers and customers.

69.     Defendants have used this information without Genoa's knowledge, consent, or authorization to benefit them in a manner that has caused, and will continue to cause, irreparable harm to Genoa.

70.     Defendants' actions constitute actual and continuing misappropriation in violation of the Ohio Uniform Trade Secrets Act.

71.     Defendants' actual and continuing misappropriation is knowing and willful.

72.     Unless Defendants are enjoined, Genoa will lose its competitive advantage in the business in which the companies directly compete, and could lose, among other things, providers, customers, and business expectations, and goodwill, for which there is no adequate remedy at law.

14

Accordingly, Genoa seeks injunctive relief in accordance with R.C. § 1333.62 to prevent Defendants' actual and threatened misappropriation of Genoa's Confidential Information, including trade secrets.

73.     Additionally, in consequence of Defendants' misappropriation of Genoa's trade secrets, Genoa seeks damages, including compensatory and punitive damages as the result of Defendants' willful and malicious conduct, along with reasonable attorneys' fees and costs, in an amount to be determined at trial, pursuant to R.C. §1333.63.

74.     Because Defendants acted maliciously and willfully in misappropriating Genoa's trade secrets, Genoa is also entitled to recover its attorneys' fees (pursuant to Ohio Revised Code §1333.64) and punitive damages (pursuant to Ohio Revised Code §1333.63).

**COUNT IV – INEVITABLE DISCLOSURE OF
CONFIDENTIAL INFORMATION AND TRADE SECRETS
(AGAINST DEFENDANTS)**

75.     Genoa hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

76.     Defendants possess trade secret information belonging to Genoa including, but not limited to, information regarding its product and marketing plans, business strategies and plans, financial and pricing information, and information regarding Genoa's business relationships, customers, and providers.

77.     Genoa takes reasonable steps to maintain confidentiality with respect to its trade secret material, including the information referenced above.

78.     The nature of Geib's work for Heidi's Pharmacy, which is a direct competitor of Genoa, makes Defendants' disclosure of Genoa's Confidential Information, including trade secrets, inevitable.

79.     Unless Defendants are enjoined, Genoa will lose its competitive advantage in the business in which the companies directly compete, and could lose, among other things, providers, customers, and business expectations, and goodwill, for which there is no adequate remedy at law. Accordingly, Genoa seeks injunctive relief to prevent Defendants' actual and threatened misappropriation of Genoa's Confidential Information, including trade secrets.

80.     Additionally, in consequence of Defendants' misappropriation of Genoa's trade secrets, Genoa seeks damages, including compensatory and punitive damages as the result of Defendants' willful and malicious conduct, along with reasonable attorneys' fees and costs, in an amount to be determined at trial.

## COUNT V – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS
## (AGAINST DEFENDANTS)

81.     Genoa hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

82.     Defendants knew of the business relationships Genoa had with its customers and providers, including its relationships with seven (7) residential facilities.

83.     Defendants intentionally interfered with those relationships by soliciting and inducing residential facilities to leave their relationships with Genoa and transfer their prescriptions to Heidi's Pharmacy.

84.     Defendants' actions were without privilege or justification.

85.     The actions of Defendants have seriously damaged, and will continue to damage and cause irreparable injury to, Genoa.

86.     Unless Defendants are enjoined, Genoa will lose its competitive advantage in the business in which the companies directly compete, and could lose, among other things, providers, customers, and business expectations, and goodwill, for which there is no adequate remedy at law.

16

Accordingly, Genoa seeks injunctive relief to prevent Defendants' actual and threatened misappropriation of Genoa's Confidential Information, including trade secrets.

87.     Additionally, in consequence of Defendants' actions, Genoa seeks damages, including compensatory and punitive damages as the result of Defendants' willful and malicious conduct, along with reasonable attorneys' fees and costs, in an amount to be determined at trial.

## COUNT VI – UNFAIR COMPETITION
## (AGAINST DEFENDANTS)

88.     Genoa hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

89.     The conduct of Defendants complained of herein constitutes unfair competition. Defendants have benefited or will benefit by reason of, and as a direct result of, their acts of unfair competition, and have benefited or will benefit from Geib's breach of her contractual obligations to Genoa, including their improper use and disclosure of Genoa's trade secrets and Confidential Information.

90.     Defendants undertook such actions for their own benefit and to gain an unfair competitive advantage in competing with Genoa.

91.      In light of Defendants' unfair competition, Genoa has been damaged and will continue to suffer irreparable injury.

92.     Unless Defendants are enjoined, Genoa will lose its competitive advantage in the business in which the companies directly compete, and could lose, among other things, providers, customers, and business expectations, and goodwill, for which there is no adequate remedy at law. Accordingly, Genoa seeks injunctive relief to prevent Defendants' actual and threatened misappropriation of Genoa's Confidential Information, including trade secrets.

93. Additionally, in consequence of Defendants' actions, Genoa seeks damages, including compensatory and punitive damages as the result of Defendants' willful and malicious conduct, along with reasonable attorneys' fees and costs, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Genoa Healthcare LLC respectfully requests judgment against Defendants as follows:

A. A temporary restraining order, preliminary injunction, and permanent injunction:

1. Enjoining Defendants from operating Heidi's Pharmacy;

2. Enjoining Defendants from violating the restrictive covenants contained in the Proprietary Interest Protection Agreement;

3. Enjoining Defendants from using or disclosing any of Genoa's Confidential Information, including trade secrets.

4. Requiring Defendants to return any and all Confidential Information, including trade secrets, of Genoa in their possession of control within seven (7) days, including all copies and reproductions.

5. Enjoining Defendants, directly or indirectly, from engaging in, or assisting anyone else to engage in, competition or attempted competition with Genoa, for a period of twelve (12) months after entry of judgment against them.

6. Enjoining Defendants, directly or indirectly, from inducing or attempting to induce any employee, vendor, supplier, agent, independent contractor, or other representative or associate of Genoa to terminate his or her relationship with Genoa for a period of twelve (12) months after entry of judgment against them.

7. Enjoining Defendants, directly or indirectly, from soliciting business from any of Genoa's providers and customers and/or from accepting business from any of Genoa's provider and customers, for a period of twelve (12) months after entry of judgment against them.

B. An award of:

1. Actual and compensatory damages in an amount to be determined at trial, but in excess of Seventy-Five Thousand Dollars ($75,000) as to each cause of action;

2.   An award of punitive damages in an amount to be determined at trial;

3.   An award of costs and attorneys' fees; and

C.      An award of such other legal and equitable relief, including injunctive relief, as this Court deems proper.

Respectfully submitted,

**Jackson Lewis P.C.**

*/s/  Allison Gluvna Folk*
Allison Gluvna Folk (0098635)
Park Center Plaza I, Suite 400
6100 Oak Tree Boulevard
Cleveland, OH 44131
(216) 750-0404 (phone)
(216) 750-0826 (fax)
Allison.folk@jacksonlewis.com

*Counsel for Plaintiff*
*Genoa Healthcare LLC*

19

## **VERIFICATION**

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that I have reviewed the foregoing Complaint, and that the allegations are true and correct.

Dated:  August 24, 2021

*Tiffany Becken, RPh*

Tiffany Becken
Director of Operations, Genoa Healthcare LLC

4840-1222-6039, v. 1

20